# AFFIDAVIT IN SUPPORT OF APPLICATION FOR CRIMINAL COMPLAINT AND ARREST WARRANT

## INTRODUCTION

1. I, Phillip B. Gautney, am a Special Agent with the Federal Bureau of Investigation and an "investigative or law enforcement officer of the United States" within the meaning of 18 U.S.C. § 2510(7). That is, I am an officer of the United States who is empowered by law to conduct investigations of and make arrests for offenses under 18 U.S.C. § 2516.

2. I have been employed as a FBI Special Agent since January 2010. I am currently assigned to the Violent Crime Squad in the Norfolk FBI Field Office in Chesapeake, Virginia. I have been the principal investigator in federal investigations involving public corruption, kidnappings, child pornography, narcotics trafficking, and violent gang/criminal enterprise organizations. The violent gang/criminal enterprise investigations have focused in part on drug trafficking involving the unlawful transportation and distribution of controlled substances, violent acts that are used by gang members and drug trafficking organizations (DTOs) to intimidate, control, and facilitate schemes where the gang/DTO obtains money and territory. Through experience and training, I have become familiar with the methods and schemes employed by gang members to obtain and distribute controlled substances. I am also familiar with, and have utilized, a wide variety of investigative techniques, including but not limited to the development of cooperating sources, Title III wiretaps, source debriefings, physical surveillance, trash pulls, controlled purchases, telephone toll record analysis, pen registers, administrative and grand jury subpoenas, search warrants, and electronic surveillance. As a result of my training and experience, I am familiar with federal laws. I have conducted and assisted in investigations into the unlawful possession, possession with intent to distribute, and distribution of controlled substances, and associated conspiracies, in violation of 21 U.S.C. §§ 841 and 846.



3. I make this Affidavit to support a criminal complaint and arrest warrant for LOUIS SHEPPARD, a/k/a "Pete." On the basis of my familiarity, and on the basis of other information which I have reviewed and determined to be reliable, I submit that there is probable cause to believe that LOUIS SHEPPARD, and others known and unknown, have committed, are committing, and will continue to commit violations of federal laws, including conspiracy to distribute, distribution, and possession with intent to distribute one kilogram or more of heroin, in violation of 21 U.S.C. §§ 846 and 841(a)(1), (b)(1)(A). SHEPPARD is a member and a major heroin distributor of the Perdue Drug Trafficking Organization (DTO). The Perdue DTO operated and distributed heroin in the Eastern District of Virginia by means of vehicles and buses. The Perdue DTO trafficked the heroin from the New York area to the Tidewater area where the heroin was broken down and divided among its co-conspirators for wholesale and street level distribution.

4. There are two counts: One count of Conspiracy to Manufacture, Distribute, and Possess with Intent to Distribute One Kilogram or More of Heroin, in violation of 21 U.S.C. §§ 846 and 841(a)(1), (b)(1)(A); and one count of Possession with Intent to Distribute 100 Grams or More of Heroin and Aiding and Abetting, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B), and 18 U.S.C. § 2. That second count stems from law enforcement's recovering roughly 800 grams of heroin distributed by SHEPPARD on June 21, 2017, as discussed in paragraphs 10 and 11.

5. The following facts are based on my personal involvement in the investigation and information from written reports, public and law-enforcement database searches, co-conspirator statements, and discussions with other law-enforcement officers and agents. I have not included every fact that I know about this investigation, but only those facts necessary to establish probable cause to issue a criminal complaint and arrest warrants.

2



## PROBABLE CAUSE

A. <u>Confidential Human Source #1</u>

6. Confidential Human Source #1 (CHS-1) is a co-conspirator involved in the Perdue DTO who is now cooperating in the investigation of SHEPPARD. CHS-1 recently met with FBI agents and told them that SHEPPARD was one of his/her main sources of supply for heroin for many years. CHS-1 began purchasing heroin from SHEPPARD in New York City beginning in or about 2011 and trafficked the heroin to the Eastern District of Virginia for distribution. CHS-1 continued to buy heroin from SHEPPARD until December 2015.

7. CHS-1 estimated he/she bought between 200 to 1000 grams of raw, unmixed heroin from SHEPPARD at each transaction and then distributed the heroin to DTO members in the Tidewater area. CHS-1 further stated that he/she bought from SHEPPARD monthly. CHS-1 concluded that he/she bought a total of 12 to 24 kilograms of heroin from SHEPPARD.

8. CHS-1 stated the most heroin he/she bought from SHEPPARD at one time was one kilogram for $65,000 to $70,000 in U.S. Currency. CHS-1 twice purchased that much heroin from SHEPPARD. CHS-1 believed SHEPPARD'S source of supply for heroin was a Dominican/Spanish male that resided in the New York City area. CHS-1 advised he/she consistently coordinated purchasing heroin from SHEPPARD via cellular telephone.

B. <u>Confidential Human Source #2</u>

9. CHS-2, another co-conspirator involved in the Perdue DTO, is also cooperating in the investigation of SHEPPARD. CHS-2 stated that in December 2016 or January 2017, Rhadu Schoolfield—a lieutenant in the DTO—began text-messaging CHS-2 to coordinate narcotic transactions in New York City. CHS-2 advised that on five or six occasions between January 2017 and June 2017, he/she coordinated transactions between Schoolfield and SHEPPARD.

3



SHEPPARD used phone number (347) 803-8630 to coordinate all narcotics transactions with CHS-2.

10. CHS-2 stated the first transaction involved 125 grams of raw heroin and the last transaction, on June 21, 2017, involved roughly 800 grams of raw heroin. CHS-2 advised he/she coordinated purchasing heroin from SHEPPARD via cellular telephone. CHS-2 also stated SHEPPARD would deliver the heroin in a plastic shopping bag. SHEPPARD could obtain large amounts of heroin in a short period of time.

11. CHS-2 advised that on June 21, 2017, Schoolfield traveled from the Norfolk, Virginia area via "Chinese Bus" to CHS-2's residence in New York City. Once Schoolfield arrived, CHS-2 contacted SHEPPARD via cellular telephone. SHEPPARD delivered a plastic shopping bag containing heroin just outside CHS-2's residence. CHS-2 exchanged U. S. currency provided by Schoolfield for the plastic bag. CHS-2 then transferred the bag of heroin to Schoolfield.

C. <u>Arrests, Searches, and Seizures</u>

12. On June 22, 2017, electronic surveillance revealed that Schoolfield traveled back to the Norfolk, Virginia area via "Chinese Bus." Once in Norfolk, Schoolfield was observed by the investigative team getting off the bus and placing a bag in the trunk of a white Chevrolet Impala and getting into the front passenger side of the vehicle. The surveillance team followed the vehicle, and a member of the Virginia State Police and members of the Chesapeake Police Department initiated a vehicle stop for a broken left tail light and for speeding.

13. A Chesapeake Police K-9 positively alerted on the vehicle, and all occupants were removed from inside in the vehicle. Officers then searched the vehicle and recovered roughly 822 grams of raw heroin from inside the bag that investigators previously observed Schoolfield place




in the trunk. Additionally, a small clear plastic baggy containing a grey substance was found in the center console of the vehicle. The Virginia State Lab later tested the suspected drugs and confirmed the presence of heroin. Schoolfield admitted to buying the 822 grams of heroin from CHS-2. CHS-2, in turn, admitted to buying the 822 grams of heroin from SHEPPARD on behalf of Schoolfield.

14. Through an administrative subpoena to AT&T in December 2017, investigators determined that telephone number (347) 803-8630 was subscribed to SHEPPARD, who resided at 79 St. Nicholas Place, Apartment 5B, New York, New York 10032. Telephone records confirm that CHS-2 had coordinated with phone number (347) 803-8630 the transaction involving the 800 grams of heroin.

15. In August 2017, thirteen (13) members of the DTO supplied by SHEPPARD were arrested in Georgia, New York, and Virginia. Law enforcement also executed ten search warrants on DTO properties and recovered more than $110,000 in U.S. Currency, ten firearms, ammunition, heroin, and several vehicles. Additionally, CHS-2 was arrested with more than $60,000 in U.S. Currency.

16. Shortly thereafter, SHEPPARD discontinued use of his phone utilizing (347) 803-8630.

17. All the Perdue DTO co-conspirators later pleaded guilty or were convicted at trial for their part in the heroin-trafficking conspiracy. To date, the aggregate sentences for the DTO members are Life for Perdue himself and more than 205 years in prison for the other DTO members.

## CONCLUSION

18. Based on the above facts, there is probable cause to believe that LOUIS SHEPPARD conspired with known and unknown co-conspirators in a conspiracy to manufacture




5

distribute, and possess with intent to distribute one kilogram or more of heroin, in violation of 21 U.S.C. §§ 846 and 841(a)(1), (b)(1)(A), and that he possessed with intent to distribute and aided and abetted possession with intent to distribute 100 grams or more of heroin, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B), and 18 U.S.C. § 2. So I ask the Court to issue a criminal complaint and arrest warrant for him.

Further your affiant sayeth naught.

_____
Phillip B. Gautney, Special Agent
Federal Bureau of Investigation

Read and Reviewed:

_____
William Jackson
Assistant United States Attorney

Subscribed and sworn to before me this 28th day of March 2019.

_____
UNITED STATES MAGISTRATE JUDGE
Norfolk, Virginia

6